## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DARWIN HUGGANS,                         :
                                        :
              Plaintiff,                :
       v.                               :          Civil Action No. 19-cv-02587 (EGS)
                                        :
EXECUTIVE OFFICE FOR                    :
UNITED STATES ATTORNEYS, *et al*.,      :
                                        :
              Defendants.               :

## <u>MEMORANDUM OPINION</u>

This matter is brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552.  On August 23, 2019, Plaintiff, proceeding *pro se* and *in forma pauperis*, initiated this lawsuit

against the Federal Bureau of Investigations ("FBI"), the Bureau of Alcohol, Tobacco, Firearms

and Explosives ("ATF"), the Drug Enforcement Administrative ("DEA"), and the Executive

Office of United States Attorneys ("EOUSA"), challenging their final determinations arising from

four identical FOIA requests, one sent to each agency. *See* Compl., ECF No. 1, at 1–2.  He seeks

a *Vaughn* index, release of the requested records, a declaration that Defendants are in violation of

FOIA, as well as unspecified sanctions and fees.  *See id.* at 8–9.

Currently pending is Defendants' motion for summary judgment, filed on July 1, 2020,

ECF No. 15, with accompanying statement of facts, ECF No. 15-1, and memorandum in support

("MSJ Mem."), ECF No.15-2.  On November 2, 2020, Plaintiff filed an opposition, with its own

accompanying statement of facts ("Opp. Stmt."), memorandum in support ("Opp. Mem."), and

unsworn declaration ("Opp. Decl."), collectively, ECF No. 19.  Defendants filed their reply

("Reply"), ECF No. 20, on November 20, 2020, after which Plaintiff sought leave to file a surreply

("Surreply"), ECF No. 22, with the proposed filing attached thereto, and a motion to correct that

surreply, ECF No. 21, both of which were granted.   The matter is now fully briefed for consideration.  For the reasons stated herein, the motion for summary judgment will be granted.

## BACKGROUND

Plaintiff, Darwin Huggans, was indicted, following a DEA investigation, in the United States District Court for the Eastern District of Missouri.  *See United States v. Huggans*, No. 4:07-cr-00541-CDP-1 (E.D. Mo. filed Sept 13, 2007) at ECF No. 1; MSJ Mem. at 2; Opp. Mem. ¶ 3. That matter culminated in a bench trial held from January through March 2009.  *See Huggans*, No. 4:07-cr-00541-CDP-1 at ECF Nos. 97–118.  On March 13, 2009, the trial concluded, and Plaintiff was convicted of (1) conspiracy to distribute and possess with intent to distribute cocaine, (2) attempt to possess with intent to distribute in excess of 5 kilograms of cocaine, and (3) criminal forfeiture, *see id.* at ECF Nos. 117–18*,* and was subsequently sentenced to life imprisonment, *see id.* at ECF No. 179.

On December 5, 2018, Plaintiff submitted an identical FOIA request to all four Defendants, requesting any and all records pertaining to Anthony Lamar Stiles, who testified against Plaintiff during his criminal trial.  *See* FBI's Decl. of Michael G. Seidel ("Seidel Decl."), ECF No. 15-3, ¶ 4, Ex. A at ("FOIA Request") at 1–2; DEA's Decl. of Angela Hertel ("Hertel Decl."), ECF No. 15-4, ¶ 7–10, Ex. A at ("FOIA Request") at 1–2; ATF's Decl. of Adam Siple ("Siple Decl.") ECF No. 15-5, ¶ 2–4, Ex. A at ("FOIA Request") at 1–2; EOUSA's Decl. of Natasha Hudgins ("Hudgins Decl."), ECF No. 15-6, ¶ 5–6, Ex. A at ("FOIA Request") at 1–2.  He also sought documents including, but not limited to: "any and all history of Mr. Stiles records and actions as an informant at any time before, during, or after he testified on January 21, 2009[,] in open court to present day[,] that he was a Government informant, and should include whether Mr. Stiles was a paid government informant or was working off time for himself or someone else." Compl. at 7; FOIA

Request at 2.  In furtherance, he contended that, upon information and belief, Stiles had served as government informant in many other cases, and that he desired any material "pertaining to Mr. Stiles being an informant."  *See id.*

Despite having requested information relevant to a third-party, Plaintiff did not provide a certification of identity, evidence of death, or privacy waiver, for Stiles.  *See* Seidel Decl. ¶¶ 4, 17, 23; Siple Decl. ¶ 3; Hertel Decl. ¶¶ 11, 25; Hudgins Decl. ¶¶ 6–7.  He instead asserted that "[t]he Government and Mr. Stiles both have admitted in open court that Mr. Stiles is and was a Government informant and by doing so, Mr. Stiles and the Government gave up any and all rights to withhold any and all information pertaining to Mr. Stiles records and actions as a[n] informant for the United States Government."  *See* FOIA Request at 1–2.  With each request, Plaintiff included (1) an unauthenticated copy of Stiles's trial testimony in *Huggans*, No. 4:07-cr-00541-CDP-1, *see* Compl. at 2; *id.* at Compl. Appx. A ("*Huggans* Transcript"); Seidel Ex. A at transcript ("*Huggans* Transcript"); Siple Ex. A at transcript ("*Huggans* Transcript"); Hertel Ex. A at transcript ("*Huggans* Transcript"), and (2) a copy of the opinion rendered in *Pickard v. Dep't of Justice*, 653 F.3d 782 (9th Cir. 2011), *see* Compl. at 2; *id.* at Compl. Appx. B (*Pickard* Opinion); Seidel Ex. A at *Pickard* Opinion; Siple Ex. A at *Pickard* Opinion; Hertel Ex. A at *Pickard* Opinion. During his subsequent appeal of ATF's determinations, Plaintiff seems to have submitted a partial unauthenticated copy of a transcript of a preliminary hearing from *United States v. Stiles*, No. 4:94-mj-06038 (E.D. Mo. May 2, 1994), *see* Siple Decl. Ex. C at transcript ("*Stiles* Transcript"), and a copy of the order of dismissal  pursuant to 18 U.S.C. § 3162(a)(1), entered in that matter on May 23, 1994, *see* Stiple Ex. C at stipulation ("*Stiles* Stip.").

Finally, Plaintiff requested a waiver of all processing fees, on the basis that "these records are not for commercial use and the disclosure of this information will contribute significantly to

the public[']s understanding of operations and the activities of the United States Government." *See* FOIA Request at 2.

## FBI'S RESPONSE

On December 24, 2018, FBI issued a letter acknowledging receipt of the FOIA request. Seidel Decl. ¶ 5; Ex. B at FBI determination letter ("FBI Determination"). Therein, FBI issued a "*Glomar* response," stating that, because Plaintiff had requested information about a third-party, it could neither confirm nor deny the existence of responsive records, and also noted the applicability of FOIA Exemption 6, *see* 5 U.S.C. 552(b)(6) ("Exemption 6"), and Exemption 7(C), *see id.* at (b)(7)(C) ("Exemption 7(C)"). *See* Seidel Decl. ¶¶ 5, 11; FBI Determination. It explained that the mere acknowledgement of the existence of such records could reasonably be expected to constitute an unwarranted invasion of Stiles's personal privacy and that it would not conduct a search. *See id.* It further advised that this response was an agency standard, and that there should be no inference as to whether any responsive documents do or not do exist. Last, the FBI indicated that it was closing the request and advised Plaintiff of his appeal rights. *Id.*

Plaintiff submitted an administrative appeal to the Office of Information Policy ("OIP") on January 7, 2019. Seidel Decl. ¶ 6; Ex. C. In his appeal, Plaintiff again stressed his entitlement to the records because of Stiles's public testimony in *Huggans*, No. 4:07-cr-00541-CDP-1. *See* Seidel Ex. C at Plaintiff's FBI appeal letter. On September 9, 2019, OIP affirmed the FBI's determinations. Seidel Decl. ¶ 8; Ex. D at FBI/OIP appeal determination letter.

## ATF'S RESPONSE

On February 19, 2019, ATF issued a letter acknowledging the FOIA request and asserting a "categorical denial" pursuant to Exemptions 6 and 7(C). Siple Decl. ¶ 5; Ex. B at ATF determination letter ("ATF Determination"). By categorically denying the request, ATF declined

to undertake a search for records.  *See id*.  ATF notified Plaintiff that, because he sought information regarding a third-party, he was required to submit either express authorization and written consent, proof of death of the third party, or a clear demonstration that the public interest in disclosure outweighs the existing privacy interest.  *See* ATF Determination.  ATF indicated that if Plaintiff could obtain written consent or provide proof of death, it would conduct a search and, if any documents were retrieved, assess the propriety of release.  Finally, it advised Plaintiff of his appeal rights and closed the request. Pursuant to ATF agency standard, it also issued a *Glomar* response, declining to confirm or deny the existence of any responsive records.  *See id*.

On March 10, 2019, Plaintiff administratively appealed this determination to OIP, again arguing that ATF's refusal was improper because of Stiles's testimony as an informant in *Huggans*, No. 4:07-cr-00541-CDP-1.  *See* Siple Decl. ¶ 6; Ex. C at Plaintiff's ATF appeal letter.  On July 30, 2019, OIP affirmed ATF's determinations. *See* Siple Decl. ¶ 6; Ex. D at ATF/OIP appeal determination letter.

## DEA'S RESPONSE

On February 1, 2019, DEA responded by letter in acknowledgment of Plaintiff's FOIA request.  Hertel Decl. ¶ 13–14; Ex. B at DEA determination letter ("DEA Determination").  DEA issued a categorical denial pursuant to Exemption 7(C) and declined to conduct a search for the records sought.  Hertzel Decl. ¶¶ 15, 19; DEA Determination.  It also notified Plaintiff that, because he sought information regarding a third-party, he was required to submit either express authorization and written consent, proof of death of the third party, or a clear demonstration that the public interest in disclosure outweighs the existing privacy interest.  Hertzel Decl. ¶ 15; DEA Determination.  Because he failed to do so, it explained that the request constituted an unwarranted invasion of personal privacy pursuant to Exemption (7)(C).  *Id.*  It also issued a *Glomar* response,

as agency standard, and declined to confirm or deny the existence of any responsive records.  *See*

DEA Determination.  Last, it advised Plaintiff of his appeal rights and closed the request.  *See id.*

Plaintiff then appealed this determination to OIP, *see* Hertel Decl. ¶ 16, and on March 22,

2019, OIP affirmed DEA's determinations, *see id.* ¶ 17–18; Ex. C at DEA/OIP appeal

determination letter.

<u>EOUSA'S RESPONSE</u>

On February 12, 2019, EOUSA issued an acknowledgment letter, issuing a categorical

denial of access to records of a third-party, thus declining to conduct a search.  *See* Hudgins Decl.

¶¶ 7, 11; Ex. B at EOUSA determination letter ("EOUSA Determination"). EOUSA explained that

the records sought could not be released absent Stiles's express authorization and consent, proof

of death, or a demonstration of public benefit from disclosure. Hudgins Decl. ¶ 7; EOUSA

Determination.  Because EOUSA had received no such information, it found that a categorical

denial was appropriate, as the disclosure would result in an unwarranted invasion of personal

privacy pursuant to Exemptions 6 and (7)(C).  *Id.*   It also issued a *Glomar* response, advising

Plaintiff that that there should be no inference that records do or do not exist.  *See* EOUSA

Determination.  It then closed the request and advised Plaintiff of his appeal rights.  *See id.*;

Hudgins Decl. ¶ 8.

Plaintiff filed an administrative appeal with OIP on February 27, 2019.  *See* Hudgins Decl.

¶ 9.  On June 10, 2019, OIP affirmed EOUSA's determinations. *See id.* ¶ 10; Ex. C at EOUSA/OIP

appeal determination letter.

**LEGAL STANDARD**

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure

an informed citizenry, vital to the functioning of a democratic society.' " *FBI v. Abramson*, 456

U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

"[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425

U.S. 352, 361 (1976).  FOIA accordingly " 'mandates release of properly requested federal agency

records, unless the materials fall squarely within one of nine statutory exemptions.' " *Hunton &*

*Williams LLP v. EPA*, 346 F. Supp. 3d 61, 72 (D.D.C. 2018) (citing *Milner v. Dep't of Navy*, 562

U.S. 562, 565 (2011)). And "even if some materials from the requested record are exempt from

disclosure, any reasonably segregable information from those documents must be disclosed after

redaction of the exempt information," unless the non-exempt portions are "inextricably intertwined

with exempt portions." *Id.* (internal quotation marks omitted) (quoting *Johnson v. EOUSA*, 310

F.3d 771, 776 (D.C. Cir. 2002)).

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v.*

*U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). An agency is entitled to

summary judgment if no material facts are genuinely in dispute and the agency demonstrates "that

its search for responsive records was adequate, that any exemptions claimed actually apply, and

that any reasonably segregable non-exempt parts of records have been disclosed after redaction of

exempt information." *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017).

To carry its burden, the agency must provide "a relatively detailed justification, specifically

identifying the reasons why a particular exemption is relevant and correlating those claims with

the particular part of the withheld document to which they apply." *Elec. Privacy Info. Ctr. v. DEA*,

192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,

566 F.2d 242, 251 (D.C. Cir. 1977)).

## DISCUSSION

ATF and EOUSA asserted categorical denials pursuant to Exemptions 6[1] and 7(C), *see* Siple Decl. ¶ 5; ATF Determination; Hudgins Decl. ¶¶ 7, 11; EOUSA Determination, and DEA asserted its categorical denial pursuant on Exemption 7(C) only, *see* Hertzel Decl. ¶¶ 15, 19; DEA Determination.  While it did not include an explicit categorical denial in its response, FBI now relies on the categorical applicability of Exemption 7(C).  *See* Seidel Decl. ¶¶ 9–11; MSJ Mem. at 4–13.

Additionally, all Defendants also issued *Glomar* responses, but in briefing, DEA and EOUSA have withdrawn their reliance on *Glomar*, and ATF and FBI's reliance on *Glomar* is in the alternative.  *See* Seidel Decl. ¶¶ 5, 11; FBI Determination; Siple Decl. ¶ 5; ATF Determination; Hertzel Decl. ¶ 15; DEA Determination; Hudgins Decl. ¶ 8; EOUSA Determination; MSJ Mem. at 10–11.

The United States Court of Appeals for the District of Columbia Circuit has "made it clear that rules exempting whole groups of records from disclosure are not only permitted, but should be encouraged as a means of enabling agencies to meet their formidable FOIA obligations in a timely fashion." *Graff v. FBI*, 822 F. Supp. 2d 23, 31 (D.D.C. 2011) (citing *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995)); *see also Schultz v. FBI*,

---

[1]     Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," while Exemption 7(C) covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6)–(7). Here, "[w]hen information is claimed to be exempt from disclosure under both provisions, courts 'focus on . . . Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.' " *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)).  Accordingly, the Court will focus on the applicability of Exemption 7(C) and need not reach the merits of Exemption 6.

63 F. Supp. 3d 1183, 1189 (E.D. Cal. 2014) (noting that categorical exemptions "serve the interest of preservation of judicial economy by relieving the court of the obligation of carrying out a case-by-case examination of documents where the FOIA request seeks production of a narrow category of documents whose production would predictably or inevitably result in an unwarranted invasion of the privacy interests of the third-party objects of the request"). This follows the Supreme Court precedent that categorical determinations are "appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989); *see id.* at 780 ("[W]e hold as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy[.]").

Furthermore, the D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) ("*Safecard* rule").

The scope and applicability of this "*SafeCard* rule" has been refined and expanded over time by the Circuit.  In *Nation Magazine*, 71 F.3d at 896, the Circuit held that "to the extent [that] any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records [were found to be] categorically exempt from disclosure." *See also Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003) ("Assuming that the 'private'

individuals mentioned in the records are living, their names and identifying information are presumptively exempt from disclosure under the *Safecard* rule.").

The Circuit has continued to uphold categorical refusals to search for records of third–parties, where such searches would reveal only protected information.  For example, in *Blackwell v. FBI*, 646 F.3d 37 (D.C. Cir. 2011), the FBI's refusal to search for documents was affirmed because "a search for records pertaining to specific individuals would have added only information that [the Circuit had] concluded is protected by Exemption 7(C)[,]" *id.* at 42 (internal quotation marks omitted); *see also Lewis v. U.S. Dep't of Justice*, 609 F. Supp. 2d 80, 82, 84 (D.D.C. 2009) (affirming agency's categorical denial under Exemption 7(C) to search for employment investigation records concerning a particular individual), *aff'd*, 2010 WL 1632835 (D.C. Cir. Apr. 7, 2010).

Categorical refusals must " 'characteristically support an inference' that the statutory requirements for exemption are satisfied." *Nation Magazine*, 71 F.3d at 893 (quoting *United States v. Landano*, 508 U.S. 165, 177 (1993)).  More specifically, to justify blanket use of Exemption 7(C), an agency must *first* establish that the applicable records were gathered for law enforcement purposes.  *Reporters Comm.*, 489 U.S. at 756 (emphasis added).  To determine whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotations omitted).

Here, the Court finds that all Defendants have met Exemption 7's preliminary requirement. Any documents responsive to Plaintiff's requests, which seek documents regarding Stiles's role as a government informant, would have been created in furtherance of an agency investigation,

wholly arising from Defendants' law enforcement duties. *See* Seidel Decl. ¶¶ 10–11 (explaining that (1) the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law, and (2) that any potential records sought would pertain to the FBI's integrated law enforcement mission, function, and duties); Hertzel Decl. ¶¶ 5–6, 20, 22 (explaining that DEA is authorized to conduct criminal investigations into trafficking of controlled substances and that any responsive records would be investigative and compiled for law enforcement purposes); Siple Decl. ¶ 9 (explaining that ATF is a criminal and regulatory enforcement agency responsible for enforcing federal firearms and explosives laws, including in the assistance of prosecution for federal crimes, and that any responsive records would have been complied for these same purposes); Hudgins Decl. ¶ 14 (explaining that EOUSA would have compiled any responsive records in furtherance of its prosecutorial responsibilities as a law enforcement agency).

Having met this threshold requirement, the Court must then determine if the withheld information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  It must first consider if there is a privacy interest implicated here by potential disclosure. *See Boyd v. Exec. Office for United States Attorneys*, 87 F. Supp. 3d 58, 72 (D.D.C. 2015) (relying on *Reporters Comm.*, 489 U.S. at 756).

Defendants argue that a vital privacy interest is at issue because "[t]he simple presence of a person's name in records compiled for law enforcement purposes may trigger questions about his or her involvement in criminal activity or his or her role in an investigation or prosecution." MSJ Mem. at 8.  Additionally, they maintain that "any records pertaining to Mr. Stiles associating him with a criminal investigation undertaken by the Agencies are likely to have a stigmatizing effect and will likely trigger questions about his involvement in criminal activity or in the

investigation or prosecution of a crime" and unnecessarily bring about unwarranted public attention and ensuing risk. *See id*.; *see also* Seidel Decl. ¶¶ 9–11 (supporting these arguments through attestations); Hertzel Decl. ¶¶ 20–6 (same); Siple Decl. ¶¶ 7–13 (same); Hudgins Decl. ¶¶ 12–17 (same).

In opposition, Plaintiff argues that Stiles is want of any privacy interest because he testified as a government witness in *Huggans*, No. 4:07-cr-00541-CDP-1, and therefore, he has waived this right. *See* Opp. Stmt. ¶ 26; Opp. Mem. at 6–8. Plaintiff also contends that there is no discernible risk to Stiles, particularly because Plaintiff disclaims any personal intent to harm him. *See* Opp. Stmt. ¶ 26; Opp. Mem. at 6–8; Surreply at 4. The Court, however, finds these arguments unpersuasive. "The fact that information about [Stiles] is a matter of public record simply makes [his] privacy interests 'fade,' not disappear altogether." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 932 (D.C. Cir. 2014) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 9 (D.C. Cir. 2011)); *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) (same); *see also Clay v. U.S. Dep't of Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (concluding that "an individual does not waive privacy rights merely by testifying at a trial"); *Lewis-Bey v. U.S. Dep't of Justice*, 595 F. Supp. 2d 120, 135 (D.D.C. 2009) (reasoning that individuals involved in law enforcement investigations have a substantial interest in seeing that their participation remains secret, and "[s]uch privacy interests are no less significant where the individual has testified at trial") (citations omitted).

Consequently, the Court finds that Stiles does, in fact, maintain a privacy interest to documents in his name, and that any responsive documents sought would necessarily reveal new information about Stiles's involvement with law enforcement endeavors. *See Jurdi v. United States*, 485 F. Supp. 3d 83, 98 (D.D.C. 2020). And while Plaintiff may personally denounce any

malintent toward Stiles, *see* Surreply at 4, the Court finds that revealing Stiles's other potential government "association[s] out of practical obscurity (particularly if the testimony occurred a significant number of years ago) and into the forefront of public awareness," could easily expose Stiles "to embarrassment, harassment, or even retribution by violent criminals." *See* MSJ Mem. at 8; Seidel Decl. ¶ 18; Hertel Decl. ¶ 25; Siple Decl. ¶ 11; Hudgins Decl. ¶ 16. In fact, evidence introduced by the Plaintiff himself speaks to gravity of the potential danger to Stiles. *See* Opp. Ex. E (sealed sentencing motion in *Stiles*, No. 4:94-mj-06038) ("Sealed Mot.") at 4. Such information is then, on its face, "categorically" protected from disclosure under exemption 7(C), absent Plaintiff's showing that "a significant public interest exists for disclosure." *Kurdyukov v. U.S. Coast Guard*, 657 F. Supp. 2d 248, 255–56 (D.D.C. 2009).

Finding the existence of a privacy interest, the Court must next examine any countervailing evidence presented by the Plaintiff and determine "if the privacy interest at stake outweighs the public's interest in disclosure." *Nation Magazine*, 71 F.3d at 893 (citing *Reporters Comm.*, 489 U.S. at 776 and *Davis v. U.S. Dep't of Justice*, 968 F.2d at 1281). And this "balance characteristically tips" toward nondisclosure. *Reporters Comm.*, 489 U.S. at 776; *Graff*, 822 F. Supp. 2d at 34 (finding that "[e]ven a weak privacy interest will always outweigh a lack of public interest.").

To overcome this privacy interest, Plaintiff raises two primary arguments. First, he argues that Stiles was "officially confirmed" as an informant and concomitantly discusses the applicability of the "official-acknowledgement doctrine." *See* Compl. at 3, 5–8; *see also* Opp. Stmt ¶¶ 24, 28; Opp. Mem. at 2, 5–8; Sealed Mot.; Opp. Ex. F at 1–16 (Huggans's Pre-Sentencing Investigation Report) ("PSI"); Opp. Ex. G (Stiles's Unexecuted DEA Agreement) ("Unexec. DEA Agreement"); Opp. Ex. H (DEA's interview notes with Stiles in re: Huggans) ("DEA Interview

Notes"); *Huggans* Transcript at 18–20, 48–9, 61, 64–5, 90–1.  Plaintiff conflates an informant's official confirmation with the official–acknowledgment doctrine, and while they are not mutually exclusive, there are distinctions in their respective applications.  *See Pickard*, 653 F.3d at 786 (explaining these distinctions); *id.* at 789 (declining to apply "official acknowledgement" test to the (c)(2) exclusion context because exemptions and exclusions "do not implicate the same concerns") (concurring opinion); *see also Memphis Pub. Co. v. FBI*, 879 F. Supp. 2d 1, 10 (D.D.C. 2012) (explaining same).

A law enforcement agency may omit records from FOIA processing under three specific "exclusions," *see* 5 U.S.C. 552(c), which differ from "exemptions," in that an agency may issue a "no records" response – a step beyond a *Glomar* response.  *See Shapiro v. Dep't of Justice*, 239 F. Supp. 3d 100, 108, 111–12 (D.D.C. 2017).  "Section 552(c) "speaks to whether or not the record in the first instance is within the scope of FOIA."  *Labow v. Dep't of Justice*, No. 11-1256 (BJR), 2014 WL 12787220, at *2 (D.D.C. Jun. 24, 2014) (citing *Am. Civil Liberties Union of Mich. v. FBI*, 734 F.3d 460, 469 (6th Cir. 2013)).  The "no records" response allows law enforcement agencies to avoid potential inquiry where "even the abstract acknowledgement of the existence or nonexistence of responsive records would itself be a disclosure causing harm cognizable under some FOIA exemption."  *Id.* (citing *Am. Civil Liberties Union of Mich.*, 734 F.3d at 469) (internal quotation marks omitted).

Section 552(c)(2) provides that "[w]henever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's *status* as an informant has been *officially confirmed*." 5 U.S.C. 552(c)(2) (emphasis added). Similarly, when an informant's

status has been officially confirmed, a *Glomar* response is also unavailable, because *Glomar* is also an *exclusion*, not an exemption. *See Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007).

Plaintiff relies heavily on case law regarding the government's use of 5 U.S.C. 552(c)(2) and *Glomar*, and their potential impropriety when information is sought about an officially confirmed informant. *See e.g.*, Compl. at 8 (citing *Benavides v. DEA*, 968 F.2d 1243, 1246 (D.C. Cir. 1992), *modified*, 976 F.2d 751 (D.C. Cir. 1992)); *id.* (citing *Memphis Pub. Co.*, 879 F. Supp. at 15); Opp. Stmt. ¶ 4 (citing *Pickard*, 653 F.3d at 788) (concurring opinion); Opp. Mem. at 5–7 (citing *Benavides v. DEA*, 968 F.2d at 1246); *id.* at 5–6 (citing *Pickard*, 653 F.3d at 788) (concurring opinion); *id.* at 7 (citing *Memphis Pub. Co.*, 879 F. Supp. 2d at 4); Surreply at 3–5 (citing *Pickard*, 653 F.3d at 788–89) (concurring opinion); *id.* at 3 (citing *Wolf v. CIA*, 473 F.3d 370, 379 (D.C. Cir. 2007)); *id.* at 4 (citing *Memphis Pub. Co.*, 879 F. Supp. 2d at 3).

Here, however, none of the Defendants rely on the Section 552(c)(2) exclusion, they have withdrawn their reliance on *Glomar*, and while a categorical denial may be similar, it is not equivalent, because Defendants have ultimately treated the request under applicable FOIA exemptions and justified those exemptions through sworn affidavits. *See Black v. U.S. Dep't of Justice*, 69 F. Supp. 3d 26, 40 (D.D.C. 2014), *aff'd*, 2015 WL 6128830 (D.C. Cir. Oct. 6, 2015) (finding that neither a records search nor a *Vaughn* index was necessary "since Defendants provided a declaration explaining in detail why the records Plaintiff requested are categorically exempt from disclosure pursuant to Exemption 7(C), the Court is satisfied that Defendants met their burden under FOIA.").

Thus, the Court finds the *official confirmation* condition of Section 552(c)(2) to be largely inapplicable, and thus turns to address Plaintiff's reliance on the official acknowledgement doctrine and its interplay with Exemption 7(C).

Under the *official acknowledgment* doctrine, "[i]f the government has officially acknowledged *information*, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid *exemption* claim." *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 620 (D.C. Cir. 2011) (emphasis added); *Afshar v. Dep't of State*, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983) (the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been "officially acknowledged" or is in the "public domain"); *accord Fitzgibbon v. CIA*, 911 F.2d 755, 765–66 (D.C. Cir. 1990). The rationale behind the doctrine is that once information has become public, any harm the agency fears from disclosure has already been sustained. *See Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999). Here, Plaintiff argues that the official acknowledgment doctrine supersedes Defendants' reliance on Exemption 7(C). *See* MSJ Mem. at 6–8; Surreply at 4.

In an attempt to show that ATF officially acknowledged information regarding Stiles's status as an informant, Plaintiff relies on the unauthenticated transcript segment of a preliminary hearing from *United States v. Stiles*, No. 4:94-mj-06038, *see generally Stiles* Transcript, and from the same litigation, a May 23, 1994 order of dismissal (pursuant to 18 U.S.C. § 3162(a)(1)), *see generally Stiles* Stip. The documents arise from a decades-old federal criminal matter pursued against Stiles. *See generally Stiles* Transcript; *Stiles* Stip. The transcript primarily contains statements made by a federal prosecutor, and his discussion with the court regarding Stiles's failure to appear, stating that: Stiles "was fully apprised and aware that is attendance at 9:00 was mandated by th[e] court and that he was to retain a lawyer. [Stiles] spoke with the special agent ATF last

week and knew this matter was set for this morning and [Stiles] told the agent he would be here this morning.  He is currently under charges in the City of St. Louis and has an attorney representing him . . . but he knows the game here[.]" *See Stiles* Transcript at 2–3.  The transcript shows that Stiles was a criminal defendant, and while the prosecutor makes a passing reference regarding Stiles's familiarity with the justice system, there is simply no information therein to prove that Stiles was acknowledged by ATF, or any other agency as informant. *See id*.  There are myriad reasons why Stiles would have spoken to an investigating agent, and without more, the Court declines to speculate.  Additionally, the dismissal based on Section 3162(a)(1) shows only that the criminal charges against Stiles were resolved based on the government's failure to file a timely indictment and does not indicate that it was based on a plea or otherwise based on his cooperation. *See generally* Stiles Stip.  Furthermore, Plaintiff presents no evidence whatsoever to support his contention that Stiles was ever officially acknowledged by the FBI.  Thus, the Court concludes that neither ATF nor FBI has officially acknowledged information regarding Stiles's status as an informant.

To show that EOUSA and DEA officially acknowledged information regarding Stiles's status as an informant, Plaintiff relies on the unauthenticated transcript portion from his own trial, which was also attached to his FOIA requests.  *See generally Huggans* Transcript; FOIA Request. In that transcript, Stiles testifies as to his cooperation with the DEA, including his transmission of information to the agency through wire, and some of those wire recordings were played at Plaintiff's trial. *See* Compl. at 3, 5–8; *see also* Opp. Stmt ¶¶ 24, 28; Opp. Mem. at 2, 5–8; *Huggans* Transcript at 18–20, 36, 38–9, 41, 48–9, 51–2, 55, 61, 64–5, 90–1.  And Stiles was presented as a witness by and through the prosecution, which is indicative of his cooperation with EOUSA in that same proceeding, all of which is certainly persuasive that he served as an informant for those

agencies in *Huggans*. *See id*. Notably, however, even if the Court were to find that EOUSA and DEA officially acknowledged Stiles as an informant in *Huggans*, it may not, without more, conclude that he has been acknowledged as an informant with the other agencies, namely, ATF or FBI. *See Valfells v. CIA*, 717 F. Supp. 2d 110, 118 (D.D.C. 2010) (disclosure by another agency and logical deductions made by the requester do not constitute official acknowledgement).

The Court notes that Plaintiff also relies on testimony elicited from Stiles during his cross-examination in *Huggans*, to suggest that other agencies have officially acknowledged him in other matters. *See* Compl. at 2; Opp. Stmt. ¶¶ 1, 25; Opp. Mem. at 5; *Huggans* Transcript at 78–86, 101. In this testimony, Stiles discusses, in passing, the names of several individuals about whom he provided information to the government by wire, seemingly regarding their alleged involvement in narcotics trafficking. *See* Huggans Transcript at 78–84. However, little to no additional context is provided regarding this information or these individuals, nor the accompanying circumstances, relevant agencies, or resulting criminal actions, if any. Additionally, this information is not acknowledged or even elicited by the *government*, instead it is elicited through impeachment questioning by Plaintiff's criminal defense counsel, often not for the truth of the matter asserted. *See id*. Thus, the Court finds this particular portion of testimony falls short of providing proof of any additional official acknowledgment. *See Students Against Genocide v. Dep't of State*, 50 F. Supp. 2d 20, 25 (D.D.C. 1999) ("[T]here is certainly no 'cat out of the bag' philosophy underlying FOIA so that any public discussion of protected information dissipates the protection which would otherwise shield the information sought.").

Finally, Plaintiff relies on a *sealed* sentencing motion in Stiles's own criminal matter, presumably arising from the same DEA investigation. *See generally* Sealed Mot. The Court notes that this motion is sealed and thus likely unintended for public view. *See Afshar*, 702 F.2d at 1130.

For the similar reasons, the Court is unclear of its ability to consider Plaintiff's other exhibits, including, a partial copy of DEA's interview notes with Stiles in *Huggans*, or an unexecuted DEA agreement with Stiles regarding his potential cooperation in *Huggans*, though the Court acknowledges that these documents could have plausibly been produced during criminal discovery. *See generally* Unexec. DEA Agreement; DEA Interview Notes. Additionally, all of these documents are introduced in this matter by way of an unsworn declaration. *See generally*, Opp. Decl.; *see also Kirkland v. McAleenan*, No. 13-194, 2019 WL 7067046, at *19–21 (D.D.C. Dec. 13, 2019) (finding that an unsworn declaration or affidavit "is not competent evidence" at summary judgment stage and that "[i]f courts were permitted to rely on unsworn statements regardless of their form and regardless of whether they were made under the penalty of perjury, the [Rule 56] advisory committee's attention to that detail would have been superfluous") (citing cases). Notwithstanding, to whatever extent these documents and the declaration are reviewable, they serve the same purpose as the *Huggans* transcript, namely to show that Stiles cooperated with DEA and EOUSA in *Huggans*, and in return, received a reduced sentence.

Assuming then, that DEA and EOUSA acknowledged Stiles as an informant in *Huggans*, the Court must next closely examine the information disclosed and compare that with the information sought by Plaintiff *in this matter*, and "standards for invoking the [official-acknowledgement] doctrine are high." *Shapiro v. Dep't of Justice*, 153 F. Supp. 3d 253, 285 (D.D.C. 2016). The public availability of the requested information does not, on its own, trigger application of the official-acknowledgment doctrine. *See ACLU*, 628 F.3d at 620–21. "[I]nstead, the specific information sought by the plaintiff must already be in the public domain by official disclosure." *Id.* at 621 (citation omitted). The D.C. Circuit has held that

> 'a plaintiff asserting a claim of prior disclosure must bear the initial burden
> of pointing to specific information in the public domain that appears to

duplicate that being withheld.' *Afshar*, 702 F.2d at 1130. The ultimate
burden of persuasion, to be sure, remains with the government, but a party
who asserts that material is publicly available carries the burden of
production on that issue. *See Occidental Petroleum Corp. v. SEC*, 873
F.2d 325, 342 (D.C. Cir. 1989). This is so because the task of proving the
negative—that information has not been revealed—might require the
government to undertake an exhaustive, potentially limitless search. *See
id.; see also McGehee v. Casey*, 718 F.2d 1137, 1141 n. 9 (D.C. Cir. 1983).

*Davis*, 968 F.2d at 1279 (finding that government was entitled to withhold requested tape

recordings relating to informant under Exemption 7(C), unless it was specifically shown by

requester that those tapes or portions of them were played during informant's in-court testimony

so as to render tapes in public domain).  In other words, Plaintiff "has the burden of showing that

there is a permanent public record of the *exact portions* he wishes." *Id.* at 1280 (emphasis added);

*see also Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999) (concluding requestor "has

discharged his burden of production by pointing to specific tapes which, having been played in

open court and received into evidence, reside in the public domain and mirror precisely the

information that he has requested[.]").

Here, the issues in the balance are substantially similar to those recently considered by

other courts in this District.  Instructive, for example, is *Jurdi*, 485 F. Supp. at 89–91, where the

plaintiff, an individual convicted of conspiracy to possess with intent to manufacture and distribute

methamphetamine, broadly sought DEA and FBI's release of investigative files, forms, and reports

regarding the government informant who publicly testified against him in his criminal trial, *id.* at

89–91. The court in *Jurdi* affirmed the defendants' categorical denial under Exemption 7(C), and

their refusals to search, because (1) despite the informant's trial testimony, the plaintiff nonetheless

fell short of official acknowledgment test, and (2) the plaintiff failed to identify any sufficient

countervailing public interest to overcome the informant's fundamental privacy interest.  *See id.*

at 92–7.  The court acknowledged that, "[a]t first glance, the government's assertion of a

categorical denial appear[ed] somewhat ambitious," namely because the third-party informant had publicly testified at Jurdi's trial and openly "acknowledged his role as a cooperator[]," and it initially seemed as if "the government should be required to conduct a full search for responsive documents and offer document-specific objections or redactions based on particular privacy concerns." *Id.* at 94. The court went on, however, to find that "[o]n closer analysis . . . it becomes clear that," the plaintiff's request was "tailored to files and reports referencing or related to [the informant]," therefore, "any responsive documents would necessarily introduce new information about the circumstances of [the informant's] involvement with law enforcement and work at least some marginal invasion into his still-extant privacy interests." *Id.* (citing *Nation Magazine*, 71 F.3d at 893).

The *Jurdi* court relied, in large part, *see id.* at 95–7, on *Black*, 69 F. Supp. 3d at 31. In *Black*, the plaintiff similarly sought all "criminal files" referencing a government informant whose identity was public and whose testimony assisted in convicting plaintiff. In response, the government refused to conduct a search and invoked a categorical denial pursuant to Exemption 7(C). *See id.* That court ultimately concluded that the government established a compelling privacy interest because the third-party, who cooperated in a criminal matter involving narcotics distribution – a serious crime often involving violence – could face significant harm if the information sought was disclosed. *Id.* at 37. Consequently, the government's categorical denial and resulting refusal to conduct a search were upheld. *See id.* at 40.

The circumstances here are virtually identical to those presented in both *Jurdi* and *Black*. Plaintiff ultimately fails "to point to specific information" that he seeks, compared to that which "has been placed in the permanent public record." *Id.* at 35–6 (citing *Afshar*, 702 F.2d at 1130). Because Plaintiff quite broadly requests *all* files and reports that have ever referenced Stiles as an

informant, and without any evidence that the government has officially acknowledged this wide range of records, the waiver "argument must be rejected." *See Jurdi*, 485 F. Supp. 3d at 97 (citing *Black*, 69 F. Supp. 3d at 35); *see also Davis*, 968 F.2d at 1280 (finding that, under the doctrine, the plaintiff has the burden of showing that there is a permanent public record of the exact documents sought). There is a disconnect here between what Plaintiff actually seeks and what he claims is public record, and without more information, "this borders on the 'all-encompassing fishing expedition' on which a FOIA requester cannot embark." *Sack v. CIA*, 53 F. Supp. 3d 154, 164 (citing *Dale v. IRS*, 238 F. Supp. 2d 99, 104–05 (D.D.C. 2002) and *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 262, 263 (9th Cir.1978) (request for all records "under" a particular individual's name was a "broad, sweeping request[ ]" that did not reasonably describe the records it sought) (other citations omitted)).  Consequently, the Court finds that Plaintiff cannot rely on the official acknowledgment doctrine.

Plaintiff's second argument in support of public interest in disclosure is that

> Anthony Stiles testified as an informant and to wearing a recording device to setout plaintiff [;] [therefore] if the government is being disingenuous about Stiles' background as an informant . . . there is a public interest in the ordinary citizen knowing about confidential informants and how the government is willing to lie to the public and hide records and information that could expose wrongdoing with Stiles that had been sanctions by the government, or that records could expose a *Brady* violation.

Opp. Stmt. ¶ 27.  Similarly, he focuses on Stiles's primary role in the resulting conviction.  *See generally* PSI; *see also* Opp. Stmt.  ¶ 3; FOIA Request.

However, "[u]nlike a "constitutionally compelled disclosure to a single party" during discovery in criminal litigation, *Cottone*, 193 F.3d at 556, a FOIA disclosure is released to the public at large.  *See Clay*, 680 F. Supp. 2d at 248 (rejecting FOIA requester's due process argument "because the FOIA is not a substitute for discovery rules which govern civil and criminal litigation

where 'different considerations' are at issue") (quoting *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009)).  Furthermore, FOIA requests are not proper vehicles for conducting investigations into an agency's prior actions.  *See Flowers v. Internal Revenue Serv.*, 307 F. Supp. 2d 60, 72 (D.D.C. 2004).  Because Plaintiff's justification is founded in his interest in exculpatory information relating to his own prosecution, conviction, and sentencing, it does not render a public benefit.

To the extent that he speculates that the government could have been involved in some unknown wrongdoing as a result of Stiles's cooperation as an informant, he offers no credible evidence in support, or justification that this mass disclosure would "shed[ ] light on an agency's performance of its statutory duties." *Reporters Comm.*, 489 U.S. at 773.  When asserting a public interest related to revealing government wrongdoing, Plaintiff must "establish more than a bare suspicion in order to obtain disclosure" and "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Ocasio v. U.S. Dep't of Justice*, 219 F. Supp. 3d 191, 195–96 (D.D.C. 2016), *aff'd*, 2017 WL 4217471 (D.C. Cir. Aug. 23, 2017) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)). Thus, the Court finds that the balance here tips in favor of the Exemption 7(C) privacy interest, without the proffer of any valid public interest.  *See Boyd*, 87 F. Supp. 3d at 72.

Plaintiff's final counter-argument to the Exemption 7(C) privacy interest, *see* Opp. Mem. at 8, is predicated on *Memphis Pub. Co.*, 879 F. Supp. 2d at 3–4, 15, which is factually distinguishable.  In *Memphis*, the plaintiff requested a single file concerning an informant, who was a noted photographer of the civil rights movement, *see id*. at 2–4.  The court found that the government's *Glomar* response and reliance on 5 U.S.C. § 552(c)(2) was improper because the FBI has officially confirmed this informant and had, through its own disclosures, acknowledged

the specific information requested.  *See id*. at 5–6, 10–12, 14–15.  It also noted the "unique circumstances" presented did not warrant the usual levels of FOIA protection, namely, that: (1) the informant was deceased and that the government requested privacy protection not for him, but for his descendants; (2) well-known questions had existed for some time surrounding the legitimacy of the investigation in which this informant had cooperated, and; (3) the requirement of a *Vaughn* index and the potential production of documents would not "set any precedent that would apply to ongoing and/or legitimate organized crime, narcotics, or even white collar criminal investigations[.]"  *Id.* at 14.  All of these noted "unique circumstances" are inapposite of those presented here, and therefore, cannot assist in overcoming Stiles's privacy interest.

Thus, the Court finds affirms Defendants' categorical reliance on Exemption 7(C) and refusal to perform a search in response to a broad third-party request for law enforcement records involving an informant was warranted.

Finally, because the Court finds that Plaintiff's FOIA requests were foreclosed by Exemption 7(C), the Court need not consider whether Defendants' withdrawn and/or alternative use of *Glomar* was proper because "[r]ight or wrong, th[e] [Exemption 7(C)] refusal deprives [Plaintiff] of nothing to which he is entitled." *Oguaju v. United States*, 288 F. 3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *reinstated*, 378 F. 3d 1115 (D.C. Cir. 2004)).

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [15] is GRANTED. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Date: March 22, 2021

/s/
EMMET G. SULLIVAN
United States District Judge